**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF NEW MEXICO**

UNITED STATES OF AMERICA,

    Plaintiff,

vs.                                                                                                                No. CR 10-1738 JB

GUILLERMO MEDEL,

    Defendant.

**MEMORANDUM OPINION AND ORDER**

**THIS MATTER** comes before the Court on: (i) the Defendant's Sentencing Memorandum, filed January 25, 2011 (Doc. 26)("Sentencing Memorandum"); and (ii) the Government's Sentencing Memorandum and Response to Defendant's Sentencing Memorandum, filed February 13, 2011 (Doc. 29)("Response"). The Court held evidentiary hearings on March 2, 2011 and March 18, 2011, and a sentencing hearing on August 10, 2011. The primary issue is whether the Court should: (i) downwardly depart under U.S.S.G. § 4A1.3 based on Defendant Guillermo Medel's criminal history category substantially over-representing the seriousness of his prior criminal conduct or the likelihood that he will commit other crimes in the future; or (ii) vary from Medel's guideline range based on the government agents who investigated and arrested Medel engaging in sentencing-factor manipulation. The Court will grant in part and deny in part Medel's request for a downward departure or variance in his Sentencing Memorandum. Because the Court finds that a criminal history category of V substantially over-represents the seriousness of Medel's prior criminal conduct or the likelihood that he will commit other crimes in the future, the Court will downwardly depart on Medel's criminal history category from V to IV. The Court will not vary

based on sentencing-factor manipulation, because Medel has not met the difficult burden of establishing that outrageous governmental conduct occurred.

## PROCEDURAL BACKGROUND

On June 10, 2010, a federal grand jury returned an Indictment, charging Medel with eleven counts of a violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2) -- Felon in Possession of a Firearm and Ammunition -- and a violation of 18 U.S.C. §§ 922(o) and 924(a)(2) -- Possession of a Machinegun.  See Doc. 2.  On October 28, 2010, Medel pled guilty to the Indictment.  See Plea Minute Sheet, filed October 28, 2010 (Doc. 24).

The United States Probation Office ("USPO") disclosed a Presentence Investigation Report ("PSR") on December 29, 2010.  The PSR calculated Medel's adjusted offense level as 30 and his total offense level, after a 3-level reduction for acceptance of responsibility, as 27.  The PSR calculated Medel's criminal history points at 10, which places him in a criminal history category of V.  An offense level of 27 and criminal history of V establishes a guideline imprisonment range of 120-150 months.

On January 25, 2011, Medel filed his Sentencing Memorandum.  In the Sentencing Memorandum, Medel stated that, with the exception of a few typographical errors, he does not challenge any of the PSR's essential facts.  See Sentencing Memorandum at 1-2.  Medel objects, however, to paragraphs 39 and 40 of the report, stating that the application of two 4-level enhancements to his offense level under U.S.S.G. § 2K2.1(b) and (b)(5) unreasonably increases the advisory guideline range in light of the sentencing-factor manipulation which occurred in this case. See Sentencing Memorandum at 2, 8-11.  Medel argues that the agents took advantage of his brain damage, his chronic heroin addiction, and his criminal contacts by offering excessively low prices for stolen firearms, and by creating a false sense of trust and cooperation.  See Sentencing

Memorandum at 8-9.  Medel further argues that he should receive a downward departure under U.S.S.G. § 4A1.3 based on his contention that the criminal history category substantially over-represents the seriousness of his prior criminal conduct or the likelihood that he will commit other crimes in the future.  See Sentencing Memorandum at 13.  He contends that "[a] series of relatively minor offenses close in time and explained by extenuating circumstances may overstate a defendant's criminal history, especially where it is apparent that the defendant is unlikely to recidivate."  Sentencing Memorandum at 13 (citing United States v. Caldwell, 219 F.3d 1186 (10th Cir. 2000)).  Medel points out that this consideration particularly applies when the "series of minor offenses is the result of some untreated mental or emotional disorder."  Sentencing Memorandum at 13 (citing United States v. Summers, 893 F.2d 63 (4th Cir. 1990)).  Medel notes that many of his offenses listed in the PSR as part of his criminal history calculation are part of a series of drug and alcohol related offenses.  See Sentencing Memorandum at 13.  Medel argues that these prior convictions have unjustifiably put him at a criminal history category V, the same category that applies to armed career criminals under U.S.S.G. § 4B1.4.  See Sentencing Memorandum at 13.  Medel argues that many of these prior offenses were non-violent, and were directly attributable to his chronic drug and alcohol abuse.  See Sentencing Memorandum at 13.

On February 9, 2011, the USPO re-disclosed the PSR and an Addendum to the PSR.  The USPO revised the PSR's criminal history section pursuant to Medel's objections to paragraphs 50 and 52 on the basis that they were constitutionally infirm based on a lack of counsel.  The re-disclosed PSR assesses no criminal history points for these convictions.  Medel's total criminal history points thus amount to 8 points as opposed to 10 points, which establishes a criminal history category of IV.  An offense level of 27 and a criminal history category of IV establishes a guideline imprisonment range of 100 to 125 months.  The PSR also corrected typographical errors.  The

Addendum to the PSR states that the adjustments pursuant to U.S.S.G. § 2K2.1(b)(1)(B) and (b)(5) were correctly assessed. The United States objected to this recalculation. The Court previously issued a Memorandum Opinion and Order overruling Medel's objections to these convictions being included in his sentencing calculation and recognizing that the sentencing guideline calculations in the original PSR regarding these convictions were proper. See Memorandum Opinion and Order, filed July 20, 2011 (Doc. 37).

On February 13, 2011, the United States filed the Government's Sentencing Memorandum and Response to Defendant's Sentencing Memorandum. The United States argues that Medel cannot meet the legal standard of sentencing-factor manipulation, because no manipulation took place, and because Medel chose to engage in the charged conduct without any coercion. See Response at 16-17. The United States points to a variety of facts in the PSR to support this contention. See Response at 16-17. The United States reiterates that the standard to demonstrate sentencing-factor manipulation is quite burdensome. See Response at 20-22. The United States thus argues that the Court should reject his claim of sentencing-factor manipulation. The United States also asks the Court to reject Medel's request for leniency because of his allegedly impaired state. See Response at 25. The United States argues that, while Medel needs treatment for his drug addiction, this "treatment should come from, and during, a federal prison sentence." Response at 26. The United States requests that the Court impose a sentence of 150 months. See Response at 27.

At the March 2, 2011 hearing, Medel testified that he was never interested in fully automatic machine guns, but that he was instead a drug addict looking for money. See Transcript of Hearing

at 13:24-14:12 (taken March 2, 2011)(Medel)("Mar. 2, 2011 Tr.").[1] The Court noted that Medel has not yet received a significant sentence. See Mar. 2, 2011 Tr. at 17:6-12 (Court). The United States pointed out that Medel has not taken responsibility for his crimes. See Mar. 2, 2011 Tr. at 17:23-18:9 (Swainston). The United States emphasized the importance of sending a message regarding crimes like the ones Medel has committed. See Mar. 2, 2011 Tr. at 19:1-9 (Swainston). The United States also argued that the facts of the case illustrate that Medel intended to sell firearms regardless of his arguments to the contrary. See Mar. 2, 2011 Tr. at 19:12-22 (Swainston). The United States also contended there was no need for leniency based on Medel's mental health issues, as those issues arose from his drug abuse. See Mar. 2, 2011 Tr. at 21:25-22:6 (Swainston). The United States pointed out that Medel has engaged in relatively sophisticated behavior relating to crimes involving guns and heroin, which illustrate he was not doing these things solely because of his drug problems. See Mar. 2, 2011 Tr. at 22:6-25 (Swainston). Medel countered that the agents involved in the case repeatedly took advantage of his impaired mental condition and drug addiction to cause him to engage in more serious crimes. See Mar 2., 2011 Tr. at 23:5-22 (Pori).

      Brandon Garcia, one of the undercover agents who investigated Medel, testified at the March 2, 2011 hearing. Garcia and the other agents ran an undercover storefront where they would purchase firearms from people that would likely be used in crimes in Albuquerque to prevent those firearms from getting in the wrong hands. See Tr. at 34:15-35:9 (Swainston, Garcia). Garcia testified that the agents usually offer higher prices for guns than other customers, because otherwise people will often not sell them any guns. See Mar. 2, 2011 Tr. at 35:14-25 (Garcia). He testified that Medel had come into the store that the agents ran and was not willing to sell his firearm, but left

---

[1]The Court's citations to the transcripts of the hearings refer to the court reporter's original, unedited versions. Any final transcripts may contain slightly different page and/or line numbers.

his firearm there temporarily in exchange for some money. See Mar. 2, 2011 Tr. at 26:4-13 (Garcia). Medel told the agents that his brother had a tommy gun for sale, which the officer characterized as a term for a fully automatic submachine gun. See Mar. 2, 2011 Tr. at 37:6-10 (Garcia). According to Garcia, Medel clarified that the gun would fire more than one round at a time with one pull of the trigger. See Mar. 2, 2011 Tr. at 37:11-16 (Garcia). Garcia stated that they later found out this gun was not an automatic, but that Garcia did eventually come in and sell them an AK-47, which was an automatic. See Mar. 2, 2011 Tr. at 37:16-24 (Garcia). Garcia testified that the only fully automatic machine gun they received during their entire operation, which resulted in acquiring 230 guns, was from Medel. See Mar. 2, 2011 Tr. at 39:17-21 (Swainston, Garcia). Garcia stated that the agents had never threatened or coerced Medel into providing them with a machine gun, and that they never manipulated or took advantage of him. See Mar. 2, 2011 Tr. at 40:3-15 (Swainston, Garcia). Garcia related several conversations with Medel involving large amounts of heroin, such as six and ten ounces, which indicated an intent to distribute the drugs. See Mar. 2, 2011 Tr. at 41:14-42:13 (Garcia, Swainston). Garcia testified that the agents would have likely have had an opportunity to arrest Medel for carrying a firearm while possessing drugs, which would result in consecutive sentences under federal law. See Mar. 2, 2011 Tr. at 42:20-43:14 (Swainston, Garcia). Garcia related that they chose not to take advantage of this situation to maintain the confidentiality of their operation. See Mar. 2, 2011 Tr. at 43:14-8 (Swainston, Garcia). Garcia stated that he was aware of the federal statute, 18 U.S.C. § 924(c), that would result in consecutive sentences in such circumstances. See Mar. 2, 2011 Tr. at 42:14-19 (Swainston, Garcia).

   On cross-examination, Garcia testified that he was aware drug addicts can obtain guns for less than forty dollars, and that the agents had offered Medel forty dollars for his gun on their first encounter with him. See Mar. 2, 2011 Tr. at 45:24-46:16 (Pori, Garcia). Garcia also noted that

many guns the agents purchased were stolen. See Mar. 2, 2011 Tr. at 46:17 (Garcia). Garcia testified that he was not aware if any of the guns Medel had brought them were stolen. See Mar. 2, 2011 Tr. at 46:20-47:3 (Pori, Garcia). Garcia noted that Medel made it clear that he was a junkie. See Mar. 2, 2011 Tr. at 50:4-5 (Garcia). Garcia stated that they had never asked Medel to sell them heroin. See Mar. 2, 2011 Tr. at 54:4-7 (Pori, Garcia).

At the March 18, 2011 hearing, Medel clarified that his argument regarding sentencing-factor manipulation is a factor that the Court can consider in arriving at a just and reasonable sentence. See Transcript of Hearing at 10:17-20 (taken March 18, 2011)(Pori)("Mar. 18, 2011 Tr."). Medel clarified that this argument was not an objection, but an argument for a variance. See Mar. 18, 2011 Tr. at 10:21-13:13 (Pori, Court). Medel conceded that the guidelines were properly calculated other than on the issues relating to his other objections. See Mar. 18, 2011 Tr. at 10:25-11:1 (Pori). Medel conceded that, if the appropriate standard is outrageous governmental conduct, he cannot satisfy that standard. See Mar. 18, 2011 Tr. at 11:14-16 (Pori). Medel pointed to a variety of manipulative conduct in which the officers engaged before arresting him. See Mar. 18, 2011 Tr. at 12:9-14:1 (Pori). The United States objected to Medel's characterization of the investigating agents' conduct. See Mar. 18, 2011 Tr. at 15:4-11 (Swainston). The United States contended that the facts indicate that there was no improper inducement on the part of the officers with respect to convincing Medel to engage in illegal conduct. See Mar. 18, 2011 Tr. at 15:12-20 (Swainston). The United States reiterated that Medel could not meet the high standard for sentencing-factor manipulation.

At the August 10, 2011 hearing, Medel noted, with respect to the substantial over-representation argument, that some of his prior convictions appear to have taken place without representation of counsel. See Transcript of Hearing at 3:1-4:4 (taken August 10, 2011)(Pori)("Aug. 10, 2011 Tr."). Medel noted that his criminal history points barely place him in a criminal history

-7-

category V and that a slight reduction would result in his criminal history category being a IV instead.  See Aug. 10, 2011 Tr. at 4:5-20 (Pori).  With respect to his mental and emotional limitations, Medel also pointed out that one of the arresting agents indicated that Medel appeared to be functionally impaired.  See Aug. 10, 2011 Tr. at 4:21-5:4 (Pori).

## LAW REGARDING SENTENCING-FACTOR MANIPULATION

Sentencing-factor manipulation, also called sentencing entrapment, can serve as the basis "for a variance based on [18 U.S.C.] § 3553(a)'s requirement that a district court consider the 'nature and circumstances of the offense.'"  United States v. Beltran, 571 F.3d 1013, 1018-19 (10th Cir. 2009).  The United States Court of Appeals for the Tenth Circuit analyzes claims of sentencing-factor manipulation under a standard of "outrageous governmental conduct."  United States v. Beltran, 571 F.3d at 1018-19.  Unlike some Circuits, the Tenth Circuit does not apply a strict definition of conduct that qualifies as sentencing-factor manipulation, but rather applies the more amorphous "outrageous governmental conduct" test.  United States v. Beltran, 571 F.3d at 1018-19 (noting that the United States Courts of Appeals for the First and Eighth Circuits apply sentencing-factor manipulation "in extraordinary cases when the government improperly engages in conduct to expand the scope of a crime").  This outrageous governmental conduct standard assesses whether "considering the totality of the circumstances, the government's conduct is so shocking, outrageous and intolerable that it offends the universal sense of justice.  United States v. Beltran, 571 F.3d at 1018 (internal quotation marks omitted).  In a narrower context, the United States Sentencing Commission has recognized that a downward departure on an offense level relating to certain drug crimes may be appropriate when government agents set a price for a controlled substance substantially below market value which results in the defendant purchasing a greater quantity of a controlled substance than his resources would normally allow.  See U.S.S.G. § 2D1.1 cmt. n.14.  The

Tenth Circuit has pointed out that when the original Tenth Circuit case, United States v. Lacey, 86 F.3d 956 (10th Cir. 1996), allowing for a departure for outrageous governmental conduct in the context of sentencing was decided, "the sentencing guidelines were mandatory and outrageous governmental conduct was a basis for a downward departure." United States v. Beltran, 571 F.3d at 1019. The Tenth Circuit has recognized that the standard for a departure is generally measured under a stricter standard than a variance based on outrageous governmental conduct. See United States v. Beltran, 571 F.3d at 1019. The defendant bears the burden to prove sentencing-factor manipulation by a preponderance of the evidence. See West v. United States, 631 F.3d 563, 570 (1st Cir. 2011).

In spite of the preponderance-of-the-evidence standard that applies to this test, the outrageous governmental conduct standard is a difficult standard for a defendant to meet. The limited and circumscribed "nature of the outrageous conduct inquiry is due in primary part to the reluctance of the judiciary to second-guess the motives and tactics of law enforcement officials." United States v. Scull, 321 F.3d 1270, 1277 (10th Cir. 2003). As a general matter, the government may need to complete several transactions with a defendant during the course of an undercover operation, because "[a]n undercover agent cannot always predict what information he will learn in the course of his investigation." United States v. Scull, 321 F.3d at 1277 (alteration in original). In the context of drug investigations, the Tenth Circuit has noted that courts must give police "leeway to probe the depth and extent of a criminal enterprise, to determine whether coconspirators exist, and to trace the drug deeper into the distribution hierarchy." United States v. Scull, 321 F.3d at 1277.

## ANALYSIS

First, Medel argues that he should receive a downward departure under U.S.S.G. § 4A1.3

based on his contention that his criminal history category substantially over-represents the seriousness of his prior criminal conduct or the likelihood that he will commit other crimes in the future.  Second, Medel seeks a variance on the grounds that the government agents who investigated and arrested him engaged in sentencing-factor manipulation.  Because the Court finds that a criminal history category of V substantially over-represents the seriousness of Medel's prior criminal conduct or the likelihood that he will commit other crimes in the future, the Court will downwardly depart on Medel's criminal history category from V to IV.  The Court will not vary based on sentencing-factor manipulation, because Medel has not met the difficult burden of establishing that outrageous governmental conduct occurred.

## I.     THE COURT WILL DOWNWARDLY DEPART ON MEDEL'S CRIMINAL HISTORY.

Medel argues that he should receive a downward departure under U.S.S.G. § 4A1.3, because his criminal history category substantially over-represents the seriousness of his prior criminal conduct or the likelihood that he will commit other crimes in the future.  See Sentencing Memorandum at 13.  He contends that "[a] series of relatively minor offenses close in time and explained by extenuating circumstances may overstate a defendant's criminal history, especially where it is apparent that the defendant is unlikely to recidivate."  Sentencing Memorandum at 13 (citing United States v. Caldwell, 219 F.3d 1186).  Medel points out that this consideration particularly applies when the "series of minor offenses is the result of some untreated mental or emotional disorder."  Sentencing Memorandum at 13 (citing United States v. Summers, 893 F.2d 63).  Medel notes that many of his offenses listed in the PSR as part of his criminal history calculation are part of a series of drug and alcohol related offenses.  See Sentencing Memorandum at 13.  Medel argues that these prior convictions have unjustifiably put him at a criminal history

category V -- the same category that applies to armed career criminals under U.S.S.G. § 4B1.4. See Sentencing Memorandum at 13. Medel argues that many of these prior offenses were non-violent, and were directly attributable to his chronic drug and alcohol abuse. See Sentencing Memorandum at 13.

The Court will downwardly depart on Medel's criminal history category, because a criminal history category of V substantially over-represents the seriousness of Medel's prior criminal conduct or the likelihood that he will commit other crimes in the future. A criminal history category of IV is more appropriate. U.S.S.G. § 4A1.3(b)(1) provides: "Standard for Downward Departure. -- If reliable information indicates that the defendant's criminal history category substantially over-represents the seriousness of the defendant's criminal history or the likelihood that the defendant will commit other crimes, a downward departure may be warranted." U.S.S.G. § 4A1.3(b)(1). With a departure under U.S.S.G. § 4A1.3, "[a]s with all departure decisions, the district court should consider all of the factual circumstances that bear upon a defendant's criminal history and likelihood for recidivism." United States v. Caldwell, 219 F.3d 1186, 1192 (10th Cir. 2000).

Medel's prior convictions by and large constitute a collection of not very serious offenses. Many of the offenses involve things like having no car insurance, improper use of evidence of car registration, and driving without a license. See PSR ¶ 49, at 15. While some of the offenses involve resisting or evading arrest, and refusing to obey an officer, those offenses appear less frequently on his record than less serious offenses. See PSR ¶¶ 50, 55, at 16, 18. The most serious prior offense includes conspiracy to commit aggravated assault and felony possession of a controlled substance. See PSR ¶ 59, at 19. Moreover, Medel's criminal history calculation falls within a criminal history category V by only one point. Given that a one point reduction would result in a criminal history

category IV and that a criminal history category IV is still quite significant in calculating a guideline imprisonment range, the Court concludes that a criminal history category V substantially over-represents the seriousness of Medel's prior criminal conduct or the likelihood that he will commit other crimes in the future.  While there is some risk of recidivism based on the number of offenses at issue, a criminal history category IV is still significant.  With some training, education, and care that the USPO can provide on release, and with the resources of the federal government, the Court may be able to reduce the risk of recidivism.  The nature of Medel's drug and alcohol problems have contributed to some of these offenses, many of which occured within a relatively short span of time.  Medel's mental and emotional problems likely contributed to some of these offenses as well.  The facts of this case weigh in favor of a downward departure to a criminal history category IV, which is still significant in calculating a guideline imprisonment range.  The guideline imprisonment range, based on this reduction and an offense level of 27, would still be 100 to 125 months.

## II.  THE COURT WILL NOT VARY FROM MEDEL'S GUIDELINE SENTENCE BASED ON SENTENCING-FACTOR MANIPULATION.

As Medel conceded at the hearing, the outrageous governmental conduct standard is a difficult standard for a defendant to meet and that he cannot likely meet this standard.  See Mar. 18, 2011 Tr. at 11:14-16 (Pori).  Medel clarified that this argument regarding sentencing-factor manipulation was not an objection, but an argument for a variance.  See Mar. 18, 2011 Tr. at 10:21-13:13 (Pori, Court).  Medel has not met this standard of outrageous governmental conduct under the facts of this case.  While Medel may have some emotional, psychological, and drug problems, the facts of the case indicate that Medel was aware of what he was doing such that he was not entrapped into a greater sentence.  Furthermore, he was the only person who brought the agents in this case a fully automatic gun out of an investigation that resulted in acquiring over 230 guns.  Medel

discussed large heroin transactions with the agents in this case, including transactions involving six and ten ounces of heroin. That amount of drugs indicates an intent to distribute drugs rather than that Medel had only a drug addiction.

      Furthermore, the agents' conduct does not indicate that they engaged in outrageous governmental conduct. This case is not one where, "considering the totality of the circumstances, the government's conduct is so shocking, outrageous and intolerable that it offends the universal sense of justice." United States v. Beltran, 571 F.3d at 1018 (internal quotation marks omitted). The agents in this case were involved in a legitimate investigation to acquire firearms that would likely become involved in the commission of crimes. They needed to use some level of deception to avoid detection when running their operation to avoid compromising the investigation or putting their own safety at risk. There is no indication that the agents offered low prices for firearms to entrap people. The facts indicate that they did so to make their operation more successful and to have more people transact business with them who might otherwise be hesitant to do so. Furthermore, the agents indicated that they likely would have had an opportunity to arrest Medel while he possessed both a firearm and heroin during drug trafficking, which would result in a much larger sentence based on the consecutive sentences that would arise from the application of 18 U.S.C. § 924(c)(D)(ii). See 18 U.S.C. § 924(c)(D)(ii) ("Notwithstanding any other provision of law . . . no term of imprisonment imposed on a person under this subsection shall run concurrently with any other term of imprisonment imposed on the person . . . ."). Garcia, one of the agents, testified that he was aware of this specific statute and its ramifications. The judiciary should act with "reluctance . . . to second-guess the motives and tactics of law enforcement officials." United States v. Scull, 321 F.3d at 1277.

      Likewise, that the agents engaged in multiple transactions with Medel before arresting him

-13-

also does not justify a variance based on sentencing-factor manipulation. As a general matter, the government may need to complete several transactions with a defendant during the course of an undercover operation because "[a]n undercover agent cannot always predict what information he will learn in the course of his investigation." United States v. Scull, 321 F.3d at 1277 (alteration in original). In this case, for example, the agents were able to acquire a fully automatic weapon, because they engaged in multiple transactions with Medel. This governmental conduct does not arise to the level of conduct "so shocking, outrageous and intolerable that it offends the universal sense of justice." United States v. Beltran, 571 F.3d at 1018 (internal quotation marks omitted). Consequently, the Court will not vary based on Medel's sentencing-factor manipulation argument. Even in the context of a variance, the Tenth Circuit's standard for sentencing-factor manipulation is still a difficult standard for a defendant to meet.

**IT IS ORDERED** that the Defendant Guillermo Medel's requests for a downward departure or variance in the Sentencing Memorandum, filed January 25, 2011 (Doc. 26) are granted in part and denied in part. The Court: (i) will downwardly depart on Medel's criminal history category from V to IV under U.S.S.G. § 4A1.3; and (ii) will not vary Medel's sentence based on sentencing-factor manipulation. Medel's offense level is 27 and his criminal history category is IV, producing a guideline imprisonment range of 100-125 months. The Court will sentence Medel to 100-months imprisonment.

_____
UNITED STATES DISTRICT JUDGE

*Counsel:*

Kenneth J. Gonzales
   United States Attorney
James D. Tierney
Reeve L. Swainston
    Assistant United States Attorneys
United States Attorney's Office
Albuquerque, New Mexico

      *Attorneys for the Plaintiff*

Brian A. Pori
   Federal Public Defender
Federal Public Defender's Office
Albuquerque, New Mexico

      *Attorney for the Defendant*